FILED
2014 Sep-29 PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

JWV/ASW: Oct 2014
GJ#9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No.** |
| ) | |
| **D. SCOTT BURTON,** ) | |
| **MICHAEL J. WILKINSON,** ) | |
| **DWIGHT A. PERRY,** ) | |
| **TERRY W. HENDERSON, JR.,** ) | |
| **and ROLAND W. RILEY.** ) | |

## INDICTMENT

The Grand Jury charges that:

At all times relevant to this Indictment:

### Introduction

1.      Serra Nissan, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama, sold new and used cars and often assisted customers with obtaining car loans.

2.      As part of the car loan funding process, Serra Nissan collected personal information from prospective customers, including, but not limited to, customers' social security numbers, credit scores, monthly income, pay stubs, current home addresses, personal references, and other information required by

financial institutions in order to fund car loans. Some of that information was gathered when the customer came in and spoke to a salesman, while more detailed information was collected at the final signing or financing, conducted by a finance manager. The entire process was overseen by the General Sales Manager ("GSM") or a sales manager.

3.     When a customer initially provided information to a salesman, the salesman would enter that information into a software program used by Serra Nissan to store and track information on its customers.  If a customer needed to obtain a car loan, the GSM or a sales manager would enter the customer's information into a different online database that submitted their information to multiple financial institutions simultaneously. The financial institutions could then respond with what financing, if any, they were willing to offer the customer. If a financial institution approved the transaction, the customer would be sent to the financing department to negotiate their loan price. There, they would meet with a finance manager who would provide them with their closing paperwork, including the paperwork for the sale itself and the car loan financing.

4.     When a car loan was financed, the funds from the financial institutions were transmitted by wire from the lending institution directly to Serra Nissan. With the profit acquired from the auto loan, the employees involved in the

deal (salesperson, finance manager, sales manager and GSM), and the dealership, were paid their commission.

5.      At all times relevant, defendant D. Scott Burton was a Sales Manager at Serra Nissan and, along with the GSM, supervised the entire sales process.

6.      At all times relevant, defendant Michael J. Wilkinson was a Finance Manager at Serra Nissan, and oversaw the financing process between customers and financial institutions.

7.      At all times relevant, defendants Dwight A. Perry, Terry W. Henderson, Jr., and Roland Riley, were salesmen at Serra Nissan.

8.      At all times relevant, Capital One Auto Finance (a division of Capital One National Association), SunTrust Bank, and JPMorgan Chase Bank, were financial institutions then insured by the Federal Deposit Insurance Corporation ("FDIC").

**COUNT ONE**
**Conspiracy**
**18 U.S.C. § 371**

**THE CONSPIRACY**

9.      The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 8 of this Indictment as though fully set out herein.

10.     From in or about August 2010 and continuing until in or about October 2013, more exact dates being unable to be determined by the Grand Jury,

in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendants

**D. SCOTT BURTON,**
**MICHAEL J. WILKINSON,**
**DWIGHT A. PERRY,**
**TERRY W. HENDERSON, JR.,**
**and ROLAND W. RILEY,**

did knowingly and willfully conspire, combine, and agree with other persons, known and unknown to the Grand Jury, to commit offenses against the United States: that is

(A) to devise and intend to devise a scheme and artifice to defraud a financial institution, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344; and

(B) to devise and intend to devise a scheme and artifice to defraud financial institutions, Nissan North America, and Serra Nissan customers, to obtain money and property belonging to others by means of materially false and fraudulent pretenses, representations, and promises by use of interstate wire communications and transmissions, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

11.   It was a part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, conspired to increase the number of cars sold by fraudulent means, to inflate the prices of vehicles, to falsify vehicle purchasers, and to misrepresent vehicle values, in order to increase profits to themselves.

12.   It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would falsify information or documents for customers that did not qualify for car loans, to ensure their car loans were funded.

13.   It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would falsely and fraudulently inflate the income information of prospective car purchasers submitted to financial institutions so customers who otherwise would not qualify for car loan funding, would be able to obtain a loan.

14.   It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would create false documents or materially alter existing documents, including, but not limited to bank statements and pay stubs, to

be submitted to financial institutions to show that customers were earning more than their actual income.

15.    It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would direct finance managers and salesmen to submit fraudulent utility bills and bank statements to financial institutions to misrepresent proof of the customer's residency during the car loan funding process.

16.    It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would falsely and fraudulently state on a credit application that two individuals lived together when, in fact, they did not so financial institutions would believe there was a combined income greater than what actually existed for the individual customer.

17.    It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would submit falsified information to financial institutions regarding what features were actually on the vehicle (*i.e.*, power seats, sunroofs, upgraded sound systems, running boards, towing packages, *etc*.), in order

to artificially inflate the vehicle's retail value, so that the financial institution would increase the amount funded for the car.

18.    It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, were financially incentivized to increase the loan amount to increase commissions for certain employees.

19.    It was a further part of the conspiracy that defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would also defraud financial institutions in instances where the financial institution required the customer to pay a certain amount of cash at the time of signing, by creating a false document that made it appear the customer paid a down payment, when in fact, it was paid by the dealership.

20.    Defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would coach customers that, if the bank called and asked about the down payment, the customers were to tell the financial institution that the customer, not the dealership, paid the down payment.

21.    Defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, would also

defraud financial institutions by making it appear that an individual who qualified for the loan purchased the vehicle when in truth and fact, the actual purchaser was a different, non-qualifying individual.

22.    Defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, defrauded financial institutions by fraudulently increasing the value of a customer's vehicle trade-in to increase the profit on a deal.

23.    Defendants **BURTON, WILKINSON, PERRY, HENDERSON,** and **RILEY**, and others both known and unknown to the Grand Jury, defrauded customers and financial institutions by quoting a customer an inflated monthly payment on a vehicle the customer was interested in purchasing, so that a finance manager could add a warranty and gap insurance at the end of the transaction, without the customer realizing they were paying for them.

## OVERT ACTS

24.    In furtherance of the conspiracy and to achieve the objects thereof, defendants **BURTON, WILKINSON, PERRY, HENDERSON**, and **RILEY**, and others both known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

25.     On or about August 26, 2010, **RILEY** attempted to sell a car to a customer named C.M.

26.     Because C.M. would not qualify for a car loan, on or about August 26, 2010, Sales Manager #1 told **RILEY** that the car would have to be bought in the name of S.G., C.M.'s relative.

27.     On or about August 30, 2010, Sales Manager #1 and **RILEY** sold and financed a car in S.G.'s name, knowing the car was actually for C.M.

28.     Between September 17, 2012, and October 11, 2012, Sales Manager #2, **WILKINSON, PERRY,** and **RILEY**, sold five different vehicles, to one customer named J.D., knowing that four of the vehicles were actually for people other than J.D.

29.     On or about September 17, 2012, **PERRY** submitted, or caused to be submitted, inflated income information to financial institutions regarding customer J.D.'s monthly income.

30.     On or about September 17, 2012, **PERRY** told customer J.D. that if the bank called J.D. to confirm the information submitted during the loan application process, J.D. was to tell the bank the higher income amount, not J.D.'s actual income.

31.     Between September 17, 2012, and October 11, 2012, defendants **WILKINSON, PERRY,** and **RILEY**, financed four of the vehicles J.D. purchased

in J.D.'s name, representing to the lender that J.D. was the purchaser of the vehicle when, in truth and fact, the vehicles were for other people.

32.     On or about October 17, 2012, Sales Manager #1 and Sales Manager #2 attended a meeting with the GSM and Salesman #1.

33.     On or about October 17, 2012, the GSM told Salesman #1 that two recent deals could not be funded until they created a "legal lie" for the bank that showed the customer making more income.

34.     On or about October 17, 2012, Sales Manager #1 and others told Salesman #1 to go out and make the deal show that the customer made more per month than what the customer told Salesman #1.

35.     On or about October 17, 2012, Sales Manager #1 and others told Salesman #1 that if he could not make the paperwork showing the customers made enough money, the deal would have to be split with another salesman who could make the documents necessary to fund the deal.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO through SIX
### Bank Fraud
### 18 U.S.C. §§ 1344, 1349 and 2

36.     The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 8 of this Indictment as though fully set out herein.

37.    From in or about August 2010 and continuing until in or about October 2013, more exact dates being unable to be determined by the Grand Jury, defendants devised a scheme and artifice to defraud financial institutions then insured by the FDIC, as identified below, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of said financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

38.    It was part of the scheme and artifice that the defendants, as identified below, with the intent to defraud, engaged in the conduct set forth in paragraphs 11 through 35 of this Indictment, which the Grand Jury repeats and realleges as though fully set out herein.

39.    On or about the date listed more specifically below for each count, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendants more specifically identified below for each count, knowingly executed, and attempted to execute, the scheme and artifice as set forth above, in that the defendants more specifically identified below for each count, aided and abetted by others known and unknown to the Grand Jury, made false representations, and submitted fraudulent information to the financial institutions more specifically identified below for each count, on behalf of Serra Nissan customers more specifically identified below for each count.

40.     The allegations of paragraphs 36 through 39 are repeated and realleged in Counts Two through Six, below, as though fully set forth therein for each count:

| Count | Date | Defendants | Financial Institution | Customer |
|-------|------|------------|----------------------|----------|
| 2 | 10/16/2012 | BURTON and WILKINSON | Capital One National Association | J.T. |
| 3 | 10/16/2012 | BURTON and WILKINSON | Capital One National Association | W.K. |
| 4 | 10/4/2012 | WILKINSON and PERRY | SunTrust Bank | J.D. |
| 5 | 10/5/2012 | WILKINSON, PERRY, and RILEY | Capital One National Association | J.D. |
| 6 | 10/11/2012 | WILKINSON and PERRY | JPMorgan Chase Bank | J.D. |

All in violation of Title 18, United States Code, Sections 1344, 1349, and 2.

## COUNTS SEVEN through TEN
### Wire Fraud
### 18 U.S.C. §§ 1343, 1349, and 2

41.     The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 8 of this Indictment as though fully set out herein.

42.     From in or about August 2010, and continuing until in or about October 2013, more exact dates being unable to be determined by the Grand Jury, the defendants, as identified below, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud the entities more specifically identified below for each count, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

12

43.     It was part of the scheme and artifice that the defendants, specifically identified below for each count, with the intent to defraud, engaged in the conduct set forth in paragraphs 11 through 23 of this Indictment, which the Grand Jury repeats and realleges as though fully set out herein.

44.     On or about the dates set forth below, each such date constituting a separate count of this Indictment, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendants more specifically identified below for each count, for the purpose of executing the above-described scheme and artifice and attempting to do so, did transmit and caused to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and communications, that is, defendants caused an interstate communication between Alabama and another state to be made on each occasion listed below, in which Serra Nissan received payment from the financing entity listed below for each count, for the sale of a vehicle to the customers set forth below.

45.     The allegations of paragraphs 41 through 44 are repeated and realleged in Counts Seven through Ten, below, as though fully set forth therein for each count:

| Count | Date | Defendants | Financing Entity | Customer |
|-------|------|-----------|-----------------|----------|
| 7 | 9/26/2012 | WILKINSON, and PERRY | Santander Consumer USA | J.D. |
| 8 | 9/24/2012 | WILKINSON, and PERRY | Nissan Motor Acceptance Corporation | J.D. |
| 9 | 3/13/2013 | WILKINSON and HENDERSON | Nissan Motor Acceptance Corporation | M.A. |
| 10 | 3/20/2013 | WILKINSON and HENDERSON | Santander Consumer USA | M.A. |

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## COUNT ELEVEN
### Identity Theft
### 18 U.S.C. §§ 1028A and 2

46.     The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 8 of this Indictment as though fully set out herein.

47.     On or about September 17, 2012, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendants

**DWIGHT A. PERRY** and **TERRY W. HENDERSON, JR.,**

aided and abetted by others known and unknown to the Grand Jury, knowingly did transfer and possess and use, without lawful authority, an Alabama-issued personal identification card belonging to J.D., knowing that this card was a means of identification of an actual person, during and in relation to the Bank Fraud and Wire Fraud, and the Conspiracy to commit same, as charged in Counts One through Ten of this Indictment.

All in violation of Title 18, United States Code, Sections 1028A and 2.

## <u>NOTICE OF FORFEITURE</u>
### [18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c)]

48.     The allegations of Counts One through Ten of this Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

49.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that upon conviction of Counts One through Ten of this Indictment the defendants

**D. SCOTT BURTON,**
**MICHAEL J. WILKINSON,**
**DWIGHT A. PERRY,**
**TERRY W. HENDERSON, JR.,**
and **ROLAND W. RILEY,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

50.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek

forfeiture of any property of said Defendant up to the value of the forfeitable

property described above.

All in accordance with Title 18, United States Code, Sections 981(a)(1)(C)

and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

 A TRUE BILL

/s/ Electronic Signature
FOREMAN OF THE GRAND JURY

JOYCE WHITE VANCE
United States Attorney


/s/ Amanda S. Wick
AMANDA WICK
Assistant United States Attorney