# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Case No. 2:14-CR-00300-VEH-SGC |
| ) | |
| D. SCOTT BURTON ) | |

## PLEA AGREEMENT

The United States of America and defendant D. Scott Burton hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to plead guilty to **COUNT ONE** of the Indictment filed in the above-numbered and captioned matter. In exchange, the United States Attorney, acting on behalf of the United States and through the undersigned Assistant United States Attorney, agrees to dismiss **COUNTS TWO** and **THREE**, and recommend the disposition specified below, subject to the conditions in paragraphs **IX** and **X**.

Defendant's Initials

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT:

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE, is:

    a.    Imprisonment for not more than 5 years;

    b.    A fine of not more than $250,000.00, or,

    c.    Both (a and b);

    d.    Supervised release of not more than three (3) years; and

    e.    Special Assessment Fee of $100 per count.

### II. FACTUAL BASIS FOR PLEA:

**The government is prepared to prove, at a minimum, the following facts at the trial of this case:**

The defendant, D. Scott Burton, began working for Serra Nissan as a sales manager in July, 2012. Serra Nissan is located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama. As a sales manager, Burton was responsible for selling cars to customers who came in to the dealership, and also assisted other salesmen with "closing" their deals with customers.

Serra Nissan sells new and used cars and often assists customers with

Defendant's Initials

obtaining car loans. As part of the car loan funding process, Serra Nissan collects personal information from prospective customers, including, but not limited to, customers' social security numbers, credit scores, monthly income, pay stubs, current home addresses, personal references, and other information required by financial institutions in order to fund car loans. Some of that information is gathered at the time the customer enters the dealership and speaks to a salesman, while more detailed information is collected at the final signing or financing, conducted by a finance manager. The entire process is overseen by the General Sales Manager (GSM) and/or a sales manager.

Once the customer is approved for a loan, the sales manager prints the "four square" (also referred to as the "buyer's order") and gives the information to the salesman. The buyer's order lists how much the customer is required to put down on the car, how much the car loan will be, and how much the trade-in value will be, if there is a trade-in. The salesman and/or sales manager is then responsible for getting the customer to agree on a price in order for there to be a sale.

There was a pervasive scheme throughout Serra Nissan, known among many of the salesman, finance managers, sales managers, and other Serra Nissan employees, that if a customer did not qualify for a car loan for some reason, the salesman, finance managers, sales managers, or GSM were to falsify information or documents that would ensure the customer was funded. Burton directly participated

Defendant's Initials

in several aspects of the scheme to defraud financial institutions including, but not limited to:

1) Burton and others would fraudulently inflate the income information of prospective car purchasers submitted to financial institutions so customers that would otherwise not qualify for car loan funding, would show an artificially high income and would be able to obtain a loan. This process was sometimes called "fluffing" a customer's income.

2) Where financial institutions required a stipulation as to proof of income, on at least one occasion, Burton created false documents, or altered existing documents, to be submitted to the financial institution or non-bank lender making the loan. On other occasions, Burton was aware that others created or altered false documents that were submitted as part of his deals. This process caused wire communications to be made across state lines.

3) Where a financial institution required a stipulation as to proof of residency, Burton was aware that fraudulent utility bills were submitted to the financial institution or non-bank lender making the loan. Others, with Burton's knowledge and consent, also falsified credit applications to show two individuals lived together when in fact, they did not, so that financial institutions would believe there was a combined income greater than what actually existed for the individual customer.

Defendant's Initials

4) Burton was aware that others would submit falsified information to financial institutions regarding what features were actually on the vehicle (*i.e.*, power seats, sunroofs, towing packages, *etc.*), in order to artificially inflate the vehicle's retail value, so that the financial institution would increase the amount funded for the car. This process was sometimes called "power booking."

5) Burton and others would also defraud lending financial institutions by making it appear that an individual who qualified for the loan, often referred to as a "straw buyer," purchased the vehicle when in truth and fact, the actual purchaser would not otherwise qualify because they had poor credit, insufficient income, no proof of residency, etc. On at least one occasion, Burton told a customer that, if the bank called to ask about who, in fact, owned the car, the customer was to tell the bank the customer owned it, even though Burton knew the customer had purchased it for someone else.

Burton and others, including Serra Nissan salesmen, general managers, GSM, sales managers, and finance managers, did willfully conspire and combine to submit materially false information to financial institutions, with the intent to defraud them for personal financial gain.

Burton and others did also wilfully conspire and combine to knowingly participate in a scheme to defraud financial institutions, non-bank lenders, and captive auto finance companies, whereby they willfully submitted materially false

Defendant's Initials

information, with the specific intent to defraud the lenders, which caused wire communications to be transmitted in interstate commerce to help carry out the scheme to defraud.

Pursuant to Section 2B1.1 of the United States Sentencing Guidelines, the parties agree that the total loss amount attributable to Burton's conduct and role in the conspiracy is greater than $200,000 but less than $400,000 for purposes of sentencing guideline calculations.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

```
_____
D. SCOTT BURTON
DEFENDANT
```

### III. COOPERATION BY DEFENDANT:

The defendant agrees to waive his Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning any/all aspects of the charged crimes, including, but not limited to, his role/participation in the offenses, as well as

Defendant's Initials ____

the roles taken by and the extent of participation of all other persons involved in these crimes of whom the defendant has knowledge. The defendant agrees to testify against all of these individuals at any time requested by the United States, including, at any Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial, retrial, or post-trial hearing. **ALL SUCH INFORMATION AND TESTIMONY SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the United States as defined and directed by the Federal Bureau of Investigation, Internal Revenue Service – Criminal Investigations Division, or any other investigative agency or body as the United States Attorney for the Northern District of Alabama may authorize, which cooperation may include the defendant's periodic submission to a polygraph examination to determine the truthfulness and accuracy of his statements and information.

### IV.   MOTION PURSUANT TO USSG § 5K1.1 AND 18 U.S.C. § 3553(e):

In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K1.1, the United States agrees to file a motion requesting a downward departure in the defendant's sentence. Should any of the counts of conviction subject the defendant to a mandatory minimum sentence, the United States may also seek a sentence reduction below said

Defendant's Initials

mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e). The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United States Attorney's Office. Furthermore, the parties agree that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States.

Should the government move to reduce the defendant's sentence, a motion will be filed prior to the defendant's sentencing hearing and will outline all material assistance which the defendant has provided. The parties clearly understand and acknowledge that because the defendant's plea is being offered in accordance with Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will <u>not</u> <u>be</u> <u>bound</u> by the government's recommendation and may choose not to reduce the sentence at all.

## V. <u>RECOMMENDED SENTENCE</u>:

Subject to the limitations in paragraph **X** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

(a) That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

Defendant's Initials

(b) That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as that is determined by the court on the date that the sentence is pronounced;

(c) That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3:

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

(e) That the defendant be required to pay restitution as ordered by the court on the date sentence is pronounced. If any other restitution becomes known to the government before the date of sentencing, the government reserves the right to request additional restitution; and

(f) That the defendant pay a special assessment fee of $100.00 per count, said amount due and owing as of the date sentence is pronounced.

Defendant's Initials

## VI. <u>WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF</u>:

In consideration of the recommended disposition of this case, I, D. SCOTT BURTON, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

(a)  Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b)  Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

(c)  Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the

Defendant's Initials

defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, D. SCOTT BURTON, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
D. SCOTT BURTON
DEFENDANT

## VII.   UNITED STATES SENTENCING GUIDELINES:

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's recent decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

Defendant's Initials _____

## VIII. AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, he does not have the right to withdraw his plea.

## IX. VOIDING OF AGREEMENT:

The defendant understands that should he move the Court to accept his plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained therein.

## X. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to**

Defendant's Initials

**make the recommendations set forth in paragraph V of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.**

XI. <u>**OTHER DISTRICTS AND JURISDICTIONS**</u>**:**

The parties understand and agree that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

XII. <u>**COLLECTION OF FINANCIAL OBLIGATION**</u>

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials

### XIII. **AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION**

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

### XIV. **TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:**

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings. Specifically,

Defendant's Initials

the defendant agrees that this agreement or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this agreement or any other time period.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XV. DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of seventeen (17) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to

Defendant's Initials

continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

> **NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____ *None* _____
(if none, write "N/A")

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

03/03/15
**DATE**

**D. SCOTT BURTON**
**Defendant**

Defendant's Initials

## XVI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised him of his rights and all possible defenses. My client has conveyed to me that he understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

03/03/15
DATE

RUSSELL STEEN, ESQ.
**Defendant's Counsel**

## XVII. GOVERNMENT'S ACKNOWLEDGMENT:

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

3/3/15
DATE

AMANDA WICK
**Assistant United States Attorney**

Defendant's Initials